PEOPLE v WHOTTE

Docket No. 52138. Submitted August 20, 1981, at Detroit.—Decided February 2, 1982. Leave to appeal applied for.

Richard Whotte, also known as Richard Breathour, was convicted by a jury in Wayne Circuit Court of four counts of armed robbery and was sentenced, Charles Kaufman, J. Defendant appeals by leave granted, claiming that he was denied a fair trial by the admission into evidence of certain items recovered by the police during a search without a warrant of trash bags located in defendant's backyard. *Held:*

1. Any expectation of privacy defendant may have had in the trash that was searched was not a reasonable expectation. The action of the police in seizing the evidence in question did not violate the fourth Amendment.

2. Defendant's claim of instructional error is without merit.

Affirmed.

T. M. BURNS, J., dissented. He would hold that defendant did have a reasonable expectation of privacy in the trash bags that were the subject of the police search and that a search warrant should have been obtained prior to the first search and particularly so with respect to the second search that was conducted. He also states that the plain view exception to the constitutional requirement for a warrant to seize evidence does not apply in this case. He would reverse defendant's convictions.

OPINION OF THE COURT

1. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — FOURTH AMENDMENT — EXPECTATION OF PRIVACY.

The appropriate test for weighing Fourth Amendment considerations in a search and seizure case is not an evaluation of the particular defendant's property interest but whether the search in question violated that defendant's reasonable expectation of privacy (US Const, Am IV).

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 16A Am Jur 2d, Constitutional Law §§ 603, 604.
[4] 68 Am Jur 2d, Searches and Seizures §§ 9, 35, 36.
[5, 6] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.

2. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — FOURTH AMENDMENT — EXPECTATION OF PRIVACY.

The Fourth Amendment protects people, not places; wherever an individual has an actual expectation of privacy such that society is prepared to recognize it as reasonable, he is entitled to freedom from unreasonable governmental intrusion (US Const, Am IV).

3. PRIVACY — INVASION OF PRIVACY — TRASH.

Factors to be considered in determining whether a person's right to privacy has been violated by someone searching through his trash are: (1) where the trash is located; (2) whether his dwelling is multiple or a single unit; (3) who removed the trash, and (4) where the search of the trash takes place.

DISSENT BY T. M. BURNS, J.

4. SEARCHES AND SEIZURES — SEARCH WITHOUT WARRANT — TRASH — CONSTITUTIONAL LAW.

*The question of whether a search without a warrant of trash bags violates either the United States or the Michigan Constitutions turns upon the fundamental privacy interests of the individual who is the subject of the search.*

5. SEARCHES AND SEIZURES — PRIVACY — PUBLIC EXPOSURE — CONSTITUTIONAL LAW — FOURTH AMENDMENT.

*There has evolved a test, applied by the courts, to determine whether or not a search by Fourth Amendment standards has indeed taken place, which, simply put, is that if an individual has a reasonable expectation of privacy in the area searched or the materials seized, a search has been conducted; but what a person knowingly exposes to the public, even in his own home or office, is not subject to Fourth Amendment protection (US Const, Am IV).*

6. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.

*The plain view exception to the constitutional requirement for a warrant to seize evidence permits police officers to seize evidence which they inadvertently discover through observation from a place where they have a lawful right to be and there is probable cause to believe that the evidence is related to the crime under investigation (US Const, Am IV; Const 1963, art 1, § 11).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *Janice M. Joyce,* Assistant Prosecuting Attorney, for the people.

*Gail Rodwan,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. On July 20, 1977, defendant was convicted by a jury of four counts of armed robbery, MCL 750.529; MSA 28.797. He was thereafter sentenced to 4 concurrent prison terms of 13 to 20 years. Following remand by this Court for a *Tucker*[1] hearing, defendant was resentenced to 4 concurrent prison terms of 6-1/2 to 12 years. He now appeals by leave granted, claiming that he was denied a fair trial by the admission into evidence of certain items recovered by the police during a warrantless search of trash bags located in defendant's backyard.

The charges against defendant arose out of the December 4, 1976, robbery of the Little Paris Bar in Grosse Pointe Park. An employee of the bar testified that defendant and another man entered the bar that day and forced her at gunpoint to give them all of the money in the cash register. In addition, the gunmen relieved three bar customers of their money or wallets. Of the ten trial witnesses who were in the bar at the time of the robbery, five were able to identify defendant and a sixth gave an equivocal identification, indicating that she had discussed the case earlier with some of the other witnesses when defendant was pointed out to her.

---

[1] *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). See *People v Moore,* 391 Mich 426, 436-442; 216 NW2d 770 (1974).

Defendant was also connected to the robberies by his apparent possession of a wallet belonging to one of the victims. The wallet was recovered by detective James La Pratt from a garbage bag located in the backyard of the two-family house where defendant resided. Defendant's marriage license was also found in the same garbage bag. La Pratt testified that when he visited the residence he was told by defendant's wife that she was married to a "Richard Martin Johnson". That day, the detective observed garbage scattered over the backyard as if dogs or cats or other animals had been through it. He took particular notice of a gas station credit slip with the name Johnson on it. When La Pratt returned the following day after having checked into other possible aliases that defendant may have been using, no one was home at defendant's residence. The detective went to the backyard and again looked at the "Johnson" credit slip and other papers with the name Johnson on them. Within a rubbish bag, La Pratt saw and retrieved a white envelope found to contain defendant's marriage license. La Pratt testified that he also took from the rubbish bag a wallet belonging to Robert Lappin, one of the robbery victims. During trial, Lappin identified the wallet as his own.

Whether and to what extent the Fourth Amendment protects against warrantless searches of an individual's garbage is a question of first impression within Michigan. The majority of other jurisdictions considering the issue have determined that such searches are constitutional.[2] However,

---

[2] See, *e.g., United States v Vahalik,* 606 F2d 99 (CA 5, 1979), *United States v Crowell,* 586 F2d 1020 (CA 4, 1978), *United States v Shelby,* 573 F2d 971 (CA 7, 1978), *Magda v Benson,* 536 F2d 111 (CA 6, 1976), *United States v Mustone,* 469 F2d 970 (CA 1, 1972), *United States v Dzialak,* 441 F2d 212 (CA 2, 1971), *cert den* 404 US 883; 92 S Ct .218;

those cases have generally involved searches of rubbish left out in anticipation of collection by public or privately contracted garbage collectors. For the most part, the courts have concluded that garbage left in a place from which it is to be removed for collection is abandoned and, therefore, outside the protection of the Fourth Amendment. *E.g., Magda v Benson,* 536 F2d 111 (CA 6, 1976). However, other courts have held that an individual has a reasonable expectation of privacy in trash set out for pickup until the trash loses its identity and meaning by being mixed and combined with other refuse. *People v Krivda,* 5 Cal 3d 357, 366; 96 Cal Rptr 62, 68; 486 P2d 1262 (1971), *rev'd on other grounds* 409 US 33; 93 S Ct 32; 34 L Ed 2d 45 (1972), citing *People v Edwards,* 71 Cal 2d 1096; 80 Cal Rptr 633; 458 P2d 713 (1969).

We agree that the appropriate test for weighing Fourth Amendment considerations is not an evaluation of the particular defendant's property interest but whether the search in question violated that defendant's reasonable expectation of privacy.[3] The Fourth Amendment protects people and

---

30 L Ed 2d 165 (1971), *United States v Minker,* 312 F2d 632 (CA 3, 1962), *cert den* 372 US 953; 83 S Ct 952; 9 L Ed 2d 978 (1963), *People v Huddleston,* 38 Ill App 3d 277; 347 NE2d 76 (1976), *Smith v State,* 510 P2d 793 (Alas, 1973), *Croker v State,* 477 Cal 122 (Wy, 1970), but see *Ball v State,* 57 Wis 2d 653; 205 NW2d 353 (1973), *People v Krivda,* 5 Cal 3d 357; 96 Cal Rptr 62; 486 P2d 1262 (1971), *rev'd on other grounds* 409 US 33; 93 S Ct 32; 34 L Ed 2d 45 (1972), *People v Edwards,* 71 Cal 2d 1096; 80 Cal Rptr 633; 458 P2d 713 (1969).

[3] We reject an approach that would merely consider whether the property in question had been abandoned by the defendant. Although unlikely, it is conceivable that property could be abandoned yet still be deemed to be within the realm of Fourth Amendment protection. The essential elements of abandonment are an intention to relinquish property and acts putting that intention into effect. *Van Slooten v Larsen,* 410 Mich 21, 50; 299 NW2d 704 (1980). It is possible that an individual could intend to relinquish property, take action to that end, yet still reasonably expect the property to at least temporarily be free from the intrusion of others. See *Smith v State,* 510 P2d 793, 795, fn 7 (Alas, 1973).

not places, *Katz v United States,* 389 US 347, 351-352; 88 S Ct 507; 19 L Ed 2d 576 (1967). Therefore, wherever an individual may harbor a reasonable expectation of privacy, he is entitled to freedom from unreasonable governmental intrusion. *Terry v Ohio,* 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The test then is whether the defendant has an actual expectation of privacy that is such that "society is prepared to recognize as 'reasonable' ". *Katz v United States, supra,* 361 (Harlan, J., *concurring).* After examining the case law from other jurisdictions, we also agree that this test is best applied by considering those factors set forth in *Smith v State,* 510 P2d 793, 797-798 (Alas, 1973):

"1. Where the trash is located,
"2. Whether the dwelling is multiple or single unit,
"3. Who removed the trash,
"4. Where the search of the trash takes place.
"One may readily arrange these factors to form a continuum. At one end of the continuum is trash located close to a single-family dwelling, on the same property as the dwelling, and searched by police officers at that location. We observe, without so deciding, that this would be a strong case for holding the expectation of privacy to be reasonable. At the other end of the continuum is trash located off the premises of a multiple-unit dwelling, and searched by a person authorized to remove it. In such a case we would be unable to hold that the expectation of privacy was reasonable."

In the instant case, consideration of the third and fourth factors militates in favor of finding that a reasonable expectation of privacy existed. The search of the trash was conducted at the scene by detective La Pratt. On the other hand, the house was a two-family unit and, therefore, the area was readily accessible to persons other than those living with defendant. The trial testimony was ambi-

guous as to the precise location of the rubbish bag in which the wallet was found. Although the bag was in the backyard it is not clear just how near it was to the house; detective La Pratt testified that "there were many [bags] scattered through the backyard". Apparently, the bag was not placed in a location from where it would be picked up by garbage collectors. Still, we believe that the *nature* of the location of the garbage is significant in this case. *Cf. People v Huddleston,* 38 Ill App 3d 277; 347 NE2d 76, 80 (1976). The backyard was an open area where animals tore through the rubbish. It could be anticipated that trash left in bags would be scattered about the yard or even carried off the premises; particular items of refuse could be expected to be accessible not only to the other residents of the dwelling but to persons within the general area. The condition of the backyard should have served to remind defendant of the unreliability of any notion of privacy he may have had regarding the trash. *Cf. United States v Shelby,* 573 F2d 971, 974 (CA 7, 1978). Under these circumstances we can only conclude that any possible expectation of privacy on defendant's part was not a reasonable expectation. Consequently detective La Pratt's actions in seizing the evidence in question did not violate the Fourth Amendment.

We have examined defendant's claim of instructional error and find it to be without merit.

Affirmed.

J. H. GILLIS, P.J., concurred.

T. M. BURNS, J. *(dissenting).* Defendant appeals his July 20, 1977, jury convictions of four counts of armed robbery, MCL 750.529; MSA 28.797. On September 6, 1977, defendant was sentenced to four concurrent prison terms of 13 to 20 years. On

May 6, 1981, this Court remanded this cause for resentencing. Defendant was resentenced on June 18, 1981, to 4 concurrent prison terms of 6-1/2 to 12 years imprisonment.

The dispositive issue in this appeal concerns whether the defendant was denied a fair trial when certain items seized by the police during a warrantless search of trash bags in his backyard were admitted into evidence.

The question of whether a warrantless search of trash bags violates either the United States or the Michigan Constitutions turns upon the fundamental privacy interests of the individual who is the subject of the search. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). The test is whether there is a reasonable expectation of privacy in the property. As was noted by the Michigan Supreme Court in *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973):

"From *Katz* * * * there has evolved a test, applied by the courts, to determine whether or not a search, by Fourth Amendment standards, has indeed taken place. Simply put, if an individual has a reasoanble expectation of privacy in the area searched, or the materials seized, a search has been conducted. 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of a Fourth Amendment protection.' *Katz, supra,* 351."

There is no Michigan precedent on the precise issue presented in this case. Other jurisdictions that have considered this issue have not been unanimous in their conclusions. The majority of state courts have held that property in trash containers is abandoned and not protected by the Fourth Amendment. *People v Huddleston,* 38 Ill App 3d 277; 347 NE2d 76 (1976), *Smith v State,*

510 P2d 793 (Alas, 1973), *Croker v State,* 477 P2d
122 (Wy, 1970). Similarly, the federal circuit courts
of appeals that have considered this issue have held
that rubbish placed on a curb for disposal is aban-
doned property that may be the subject of a war-
rantless search. *United States v Mustone,* 469 F2d
970 (CA 1, 1972), *United States v Crowell,* 586 F2d
1020 (CA 4, 1978), *United States v Vahalik,* 606
F2d 99 (CA 5, 1979), *Magda v Benson,* 536 F2d 111
(CA 6, 1972), *United States v Shelby,* 573 F2d 971
(CA 7, 1978).

On the other hand, a minority of state courts
have held that there is a reasonable expectation of
privacy in trash placed in containers for disposal
under certain circumstances. *People v Krivda,* 5
Cal 3d 357; 96 Cal Rptr 62; 486 P2d 1262 (1971),
*rev'd on other grounds* 409 US 33; 93 S Ct 32; 34 L
Ed 2d 45 (1972), *People v Wert,* 550 SW2d 1 (Tenn Cr
App, 1977), *Ball v State,* 57 Wis 2d 653; 205 NW2d 353
(1973).

Upon consideration of these cases I find that the
analysis of this issue employed by the Alaska
Supreme Court sets forth the pertinent factors to
be considered in arriving at a decision as to
whether the search in this case was legal. In
*Smith v State, supra,* 797-798, the Alaska court
stated:

"To be sure, the question is very close. A review of
several recent garbage can search cases reveals a basic
core of factors to be considered in determining whether
a reasonable expectation of privacy exists. Those factors
are:
  "1. Where the trash is located,
  "2. Whether the dwelling is multiple or single unit,
  "3. Who removed the trash,
  "4. Where the search of the trash takes place.
  "One may readily arrange these factors to form a

continuum. At one end of the continuum is trash located close to a single-family dwelling, on the same property as the dwelling, and searched by police officers at that location. We observe, without so deciding, that this would be a strong case for holding the expectation of privacy to be reasonable. At the other end of the continuum is trash located off the premises of a multiple-unit dwelling, and searched by a person authorized to remove it. In such a case we would be unable to hold that the expectation of privacy was unreasonable."

Applying this test to the present case, the four factors identified by the Alaska Supreme Court would weigh toward a reasonable expectation of privacy. In this case, the trash was located in the backyard of a two-family dwelling. Unlike the majority opinion, I would find that a two-family housing unit is more similar to a single-family dwelling than to a larger apartment complex. I would also find that where, as in this case, there is no evidence of a shared backyard, a reasonable expectation of privacy does exist in trash bags placed in it. The trash bag was not removed from the premises but was searched in defendant's backyard by persons who were not authorized by defendant to handle it. The trash bags were not in a location open to the public or at a place where they were customarily left for pickup. I would hold then that defendant did have a reasonable expectation of privacy in the trash bags that were the subject of the police search. Therefore, a search warrant should have been obtained prior to the search. This is particularly true in this case with respect to the second search that was conducted.

I am not able to accept the prosecutor's argument that the search in this case was proper under the plain view exception to the warrant requirement. The plain view exception permits police officers to seize evidence that is observed

from a place where the officers have a lawful right to be and there is probable cause to believe that the evidence is related to the crime. Evidence that is seized under the authority of the plain view exception must have been inadvertently discovered. *People v Heard,* 65 Mich App 494; 237 NW2d 525 (1975).

It is evident from the record before us that the plain view exception does not apply in this case. First, the evidence was not in the police officer's plain view, that is, he was required to open trash bags in order to discover it. Second, I cannot hold that the discovery was inadvertent. The police officer did not stumble upon this evidence during the course of his investigation; rather, he found it after sifting through refuse and debris while examining trash bags in defendant's backyard.

I dissent and would reverse defendant's convictions of armed robbery.