**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN REAL PROPERTY LOCATED AT 987 FISHER ROAD, GROSSE POINTE, MICHIGAN, Defendant.**

88–CV–71360–DT.

United States District Court, E.D. Michigan, S.D.

June 26, 1989.

William Sauget, Sp. Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Brian Legghio, Detroit, Mich., for defendant.

MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Claimants Pamela Gianopoulos Antonow and Sandra Louise Judd have moved the court to suppress evidence in this forfeiture action. The issue is whether the Fourth Amendment to either the United States Constitution or the Michigan Constitution proscribes the warrantless entry by police upon the curtilage of real property to search and seize garbage set out in the backyard for ordinary garbage collection. While the United States Supreme Court has recently ruled that the Fourth Amendment to the United States Constitution does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of a home, *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Court has not specifically addressed the instant issue. *See, e.g., Oliver v. United States*, 466 U.S. 170, 188 n. 11, 104 S.Ct. 1735, 1742 n. 11, 80 L.Ed.2d 214 (1984) ("Nor is it necessary in these cases to consider ... the degree of Fourth Amendment protection afforded the curtilage,...."). After a thorough review of the relevant principles and authorities, the court holds that the police officer's war-

rantless search and seizure [1] of closed garbage bags situated upon the curtilage of a home violates both the federal and Michigan constitutions. The court will state the undisputed facts relevant to the motion before addressing the legal arguments.

## I. BACKGROUND FACTS

In November of 1987 the Grosse Pointe, Michigan Police Department began investigating the residents of and the activities at 987 Fisher Road, Grosse, Pointe, Michigan. The police initiated the investigation because a neighbor complained to the police about excessive vehicular traffic at the house. The neighbor testified that:

Shortly after they moved in which I believe was last August [1987], the grounds on the place just totally disintegrated, the grass was not cut which is very alien to everybody else that lives around there. ... I would say approximately about a month after they occupied the house, I noticed many different cars at all times going in and out. It was the variety of people that were going in and out, totally foreign to the people that would normally—I would consider whatever normal is a visit a neighborhood and different automobiles, very different cars.

. . . .

... One evening I had guests in my house, this was in the evening, some ladies came over to play cards. They got out, there was a black lady parked her car in front of my house and she's greeting my guests as they are going in my house. Now, I find that a little objectionable.

. . . .

Preliminary Examination Transcript, at 9–13. After the neighbors complained to the police, police officer John Drummond began an investigation into the activities at 987 Fisher Road, conducting surveillance on approximately six different occasions between 6:30 p.m. and 8:30 p.m. in November and December of 1987:

A: There was an excessive amount of traffic usually in the evening after 6:00 or so in and out in the driveway.

Q: When you use the term excessive, can you estimate how many vehicles you would say?

A: Sometimes three or four cars in an hour going out the driveway, because it would be the same car going and coming.

Preliminary Examination Transcript, at 22. Subsequent to the surveillance, Officers Drummond and Van Dale "discussed the [possibility] of verifying the activity complained about." Search Warrant Affidavit, at 1–2 (attached as Exhibit 1 to Claimants' Brief). Specifically, the Grosse Pointe police decided to collect the garbage at 987 Fisher Road so that they could search for evidence of narcotics activity. *See* Van Dale Deposition, at 45.

In Grosse Pointe City, property owners do not carry their garbage to the curb for collection. According to the government, the city has "valet garbage service:"

In this locale, the procedure for refuse collection entails the use of a full size garbage truck and several Cushman scooters. The truck is parked at the end of a block and the scooters are utilized to enter the curtilege [sic] of each property owner. The scooters then ferry each property owner's rubbish to the main truck.

On March 23, 1988, Officer Van Dale put on green coveralls and disguised himself as a municipal worker. Van Dale, using a

---

1. The parties at times refer to the police officer's act of removing the garbage bags from the curtilage as a "seizure" or a "search and seizure." The police officer's actions can be viewed as both a search and a seizure. The police officer conducted a search in the sense that he was looking for evidence of drug trafficking contained within the garbage bags when they were still within the curtilage; he seized the garbage in the sense that he took physical possession of it and carted it away, following which he searched through the bags to find particular items indicative of drug activity. For a provocative article addressing the semantics of "search" in the fourth amendment context, see Cunningham, *A Linguistic Analysis of "Search" in the Fourth Amendment: A Search for Common Sense,* 73 Iowa L.Rev. 541 (1988) [cited as *Cunningham* ]. The analysis of whether the police conducted a fourth amendment "search and seizure" is discussed further in the body of the memorandum opinion.

scooter, began collecting trash according to the standard collection route, which included 987 Fisher Road:

A: You would drive up the side drive to the rear of the home. Approximately where a barbecue grill is now situated at the rear of the home against the home—would have been where the garbage bags would have been.

Q: And you walked to where the barbecue pit is here?

A: Yes.

Q: And that's where the four bags were located?

A: Right in that area, yes.

Q: When you took the Cushman scooter and obtained the trash bags, did you enter onto the property—

A: Yes.

Q: of 987 Fisher Road?

A: Yes, I did.

Q: And you hadn't obtained written or verbal consent from the owner, is that correct?

A: That's right.

Q: The property which you acquired from 987 Fisher Road in Grosse Pointe City on March 23, 1988 was the [sic] property which you acquired while it was on the private premises, is that correct?

A: That's right.

Van Dale Deposition, at 59–72 (portions omitted). The parties do not dispute that the officer drove up the side driveway of 987 Fisher Road to the rear of the home. Next to the driveway, against the back wall of the house, Van Dale found four plastic garbages that were tied at the top. The officer removed the bags, placed them in the scooter, and continued with the garbage collection. The police then emptied the bags and examined their contents. The garbage bags contained some items indicative of drug trafficking.

The police submitted six items to a laboratory for analysis, one of which contained one-tenth of one gram of an "off-white material [that] showed the presence of co-

caine." *See* State Police Laboratories Report, March 23, 1988. Officer Van Dale consequently sought a search warrant for the Fisher residence on March 25, 1988, relying significantly upon the items seized from the garbage bags. Officer Van Dale's Affidavit in support of the search warrant contains eleven paragraphs of which six refer to the warrantless seizure or the fruits of that seizure. The parties agree that the Affidavit separates into three components: (1) citizen complaints of people frequently coming and going from the Fisher residence at all hours of the day or night; (2) police observations of the activity at the house; and (3) the items seized from the four plastic bags.

Grosse Pointe City Judge Stan Kazul authorized a search warrant for 987 Fisher Road, the execution of which produced less than one gram of cocaine. The residents of the house, Pamela Gianopoulos Antonow and Elliot Michael Antonow, pled guilty in Detroit, Michigan, Recorder's Court to attempted possession of less than 50 grams of cocaine.

The federal government filed the instant forfeiture action against the Fisher Road property under 21 U.S.C. § 881(a)(3) & (7), which state:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2) [controlled substances and the accouterments of their production and distribution].

. . . .

(7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest

of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Pamela Gianopoulos Antonow and Sandra Louis Judd have filed claims to the property and have moved to suppress the evidence seized from the garbage search on March 23, 1988 and from the execution of the search warrant on March 25, 1988. The claimants contend that the warrantless search and seizure of the garbages while they remained within the curtilage [2] of 987 Fisher Road violates the fourth amendment of the state and federal constitutions. These constitutional violations, the claimants contend, render the search warrant invalid inasmuch as the Affidavit in support of it relied upon illegally obtained evidence. The claimants conclude that the government may not rely upon the illegally obtained evidence from 987 Fisher Road to make its requisite showing of probable cause under the forfeiture statute, *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965); *United States v. One 1978 Mercedes Benz Four–Door Sedan,* 711 F.2d 1297, 1303 (5th Cir.1983), and that the evidence must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The court agrees.

## II. FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA

The fourth amendment provides:

The right of the people to be secure in their person, houses, papers, and effects, *against unreasonable searches and sei-*

*zures,* shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(emphasis added). The analytical steps that this court must take to decide whether a fourth amendment search occurred cover much judicial landscape and involve a few alternative routes. As one commentator noted six [3] of the recent Supreme Court cases that involve determinations of whether governmental activity amounted to fourth amendment searches "provoked startling dissension among the members of the Court. No one Justice joined in the majority opinion in all six cases, and all but three joined harsh dissents in at least one case." *Cunningham,* 73 Iowa L.Rev. at 543.

Historically, the Supreme Court felt that there must be a physical intrusion into a constitutionally protected area to implicate the fourth amendment. *See, e.g., On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932). In the context of police examination of garbage,

courts deemed it necessary to resolve two property law issues: (1) whether the defendant had intended to abandon the object which the police discovered; and (2) whether the discovery was accomplished by an intrusion upon the curtilage. This may be illustrated by comparing the two leading pre-*Katz* cases in point: *Work v. United States* [, 243 F.2d 660 (D.C.Cir.1957) ]; and *United States v. Minker* [, 312 F.2d 632 (3d Cir.1962) ]. In *Work,* officers went to defendant's

---

**2.** The government has conceded that the garbage bags were within the curtilage of the house.

**3.** *See United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (looking into barn interior with flashlight to see drug laboratory); *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (picking up stereo turntable and looking at serial number on bottom); *Dow Chemical Co. v. United States,* 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986)

(photographing open-air chemical plant from airplane); *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) (viewing backyard of home from 1000 feet in air); *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (tracking movements of drum of chemicals by monitoring radio signals from transmitter hidden in drum); *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (entering private, fenced farmland to find marijuana patch).

home after receiving information that a young girl was using narcotics there; they knocked on the door and, when no one answered, took a few steps into the first floor hallway. The defendant then walked past the officers out the front door and down the steps to an area under the porch, where she was seen placing something in a trash can. The officers then lifted the top of the trash can and retrieved a phial of pills. In holding that this was an illegal search, the court stressed: (i) the pills had not been abandoned by the defendant, for the circumstances indicated she was trying to hide the pills in the can rather than permanently dispose of them; and (ii) the "trash receptacle in which the phial was found was in close proximity to the house," and thus was within the curtilage—an area protected by the Fourth Amendment. In *Minker*, on the other hand, IRS agents arranged for a trash collector to segregate the trash which he collected from a four-unit apartment building where defendant resided and to turn that trash over to them. The court concluded that this action did not intrude upon the defendant's Fourth Amendment rights, as (i) the defendant had intended to abandon the adding machine tapes and other slips of paper which the agents found in the trash; and (ii) the trash receptacle located outside the building was not within the curtilage of the defendant's second-floor apartment.

LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 2.6(c), at 476 (2d ed. 1987). In 1967, however, the Supreme Court rejected the rule that required a physical trespass for there to be fourth amendment protection and adopted a reasonable expectation of privacy test. *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). *Katz* involved FBI agents attaching an electronic listening and recording device to the exterior of a public phone booth from which Katz was calling. The Court held that the agents violated the fourth amendment, finding that Katz had a reasonable

expectation of privacy while he was in the phone booth that society would recognize as reasonable. *Id.*

The Court recognized that the fourth amendment "protects people, not places." *Id.* at 351, 88 S.Ct. at 511. Accordingly,

[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [citations omitted]. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [citations omitted].

*Id.* at 351, 88 S.Ct. at 511. Justice Harlan, concurring in the majority opinion, formulated the fourth amendment inquiry as follows:

As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a two fold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus, a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.

*Id.* at 361, 88 S.Ct. at 516. Justice Harlan's concurrence is frequently cited as the holding of the case.[4]

In *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the Supreme Court used the *Katz* test to determine if the fourth amendment protects garbage placed at the curb outside of a home:

4. *See Cunningham,* 73 Iowa L.Rev. at 569.

"The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable." *Id.*, 108 S.Ct. at 1628. In ruling that the fourth amendment did not protect the respondents, the Court stated:

[W]e conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. [citation omitted]. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," [citation omitted], respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

Furthermore, as we had held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not subject of Fourth Amendment protection." [citing *Katz*].

. . . .

. . . In *United States v. Thornton*, 241 U.S.App.D.C. 46, 56, and n. 11, 746 F.2d 39, 49 and n. 11 (1984), the court observed that "the overwhelming weight of authority rejects the proposition that a reasonable expectation of privacy exists with respect to trash discarded outside the home and the curtilege [sic] thereof." *Id.* at 1629–30 (footnotes omitted). Under the *Katz* test, the Court appeared to assume that the respondents had a subjective expectation of privacy in the garbage placed at the curbside, thus meeting the first *Katz* prong. Looking to the second prong, the Court reasoned that society would not recognize that expectation as reasonable under the circumstances. The rationale of the decision is that the garbage was placed outside the curtilage of the home in an area accessible to the public, allowing third persons—including the garbage collector for whom the garbage was intended—to sort through it. The claimants in the instant case rely upon the curtilage doctrine and the Supreme Court's emphasis in *Greenwood* that the garbage was outside the curtilage of the respondents' home. The claimants argue that *Greenwood* implicitly teaches that a person would have an expectation of privacy, which society would accept as reasonable, in garbage kept from the general public within the curtilage of a home.

The government contends that the claimants abandoned the garbage, relinquishing any expectation of privacy in it, and that "the rear of 987 Fisher Road is the functional equivalent of [the] curbside for purposes of constitutional protection." Moreover, the government argues that the affluent in society should not have their garbage protected from police investigations while middle and lower class citizens, who have to put their garbage at the curbside, subject their garbage to unfettered police scrutiny. Since the "society" of Grosse Pointe City has its garbage picked up from the backyards, garages, and curtilages of its residents, the government posits that society would not accept as reasonable the claimants' expectation of privacy in garbage placed in such areas.

For legal support, the government principally relies upon *United States v. Kramer*, 711 F.2d 789 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), which was cited by the *Greenwood* court. In *Kramer*, the defendant had put garbage bags by the roadside in front of his house to be collected by a private garbage removal service. The police, without a warrant, picked up the trash bags, took them to the police station, and searched

through their contents. The search produced records of marijuana sales.

The United States Court of Appeals for the Seventh Circuit held that the garbage search did not violate the fourth amendment. *Id.* at 793–94. The court initially noted that the fourth amendment does not extend to discarded garbage. While the police may have trespassed on the outer fringes of the defendant's property, that trespass did not infringe the interests that the fourth amendment protects. *Id.* at 794. The court does not find *Kramer* controlling because it does not involve garbage bags located close to a back door within the curtilage.

Curtilage is "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver*, 466 U.S. at 180, 104 S.Ct. at 1742 (quoting *Boyd v. United States*, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886)). The Supreme Court continues to refer to the doctrine:

> [T]he common law distinguished "open fields" from the "curtilage," the land immediately surrounding and associated with the home. [citation omitted]. The distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home…. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. [citations omitted]. Conversely, the common law implies, as we reaffirm today,

that no expectation of privacy legitimately attaches to open fields.

*Oliver*, 466 U.S. at 180, 104 S.Ct. at 1742. More recent, the Supreme Court referred to curtilage when deciding "[w]hether surveillance of the interior of a partially covered greenhouse in a residential backyard from the vantage point of a helicopter located 400 feet above the greenhouse constitutes a 'search' for which a warrant is required under the Fourth Amendment…." *Florida v. Riley*, —— U.S. ——, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Justice O'Connor, concurring, stated:

> In evaluating whether this observation constituted a search for which a warrant was required, we acknowledged the importance of curtilage in Fourth Amendment doctrine: "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." [*California v. Ciraolo*, 476 U.S. 207, 212–13, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986)]. Although the curtilage is an area to which the private activities of the home extend, all police observations of the curtilage is not necessarily barred by the Fourth Amendment.

*Id.*, 109 S.Ct. at 697. As Supreme Court authority indicates, the doctrine of curtilage changes the complexion of fourth amendment analysis. Contrary to the government's position, the court finds the location of the garbage—whether within or outside of the curtilage, for example—to be particularly important.[5] In *Greenwood*, the Supreme Court mentioned that the garbage was "outside the curtilage," "on or at the side of a public street," "at the curb,"

---

**5.** The court does not accept the proposition that a person can never have a reasonable expectation of privacy with regard to garbage. To illustrate, not everyone lives in a municipality that has garbage pickup—some people in small towns or rural areas have to dispose of their garbage themselves. To say that they have no reasonable expectation of privacy in their garbage while they accumulate it on their property until they decide to dispose of it, no matter where located or how contained, is to extend *Katz* beyond reason. *See, e.g., Gouled v. United*

*States*, 255 U.S. 298, 309–10, 41 S.Ct. 261, 265, 65 L.Ed. 647 (1921) (unjustified search and seizure violates fourth amendment no matter what the character of the paper). Investigations of and through garbage while it remains within the confines of the home and the curtilage, if allowed, would result in intrusions upon the sanctity of innocent citizens. The court will not color its analysis because the case concerns garbage or because evidence of drug activity was found among that garbage.

"in an area accessible to the public," and "in public areas."

In *California v. Rooney*, 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987), a garbage search case in which the writ of certiorari was dismissed as improvidently granted, the three justices dissenting from the dismissal again implicitly emphasized the importance of curtilage:

I note at the outset that I have no reason to differ with the state court that the trash bin *was not within the curtilage of Rooney's apartment, that the garage was open to the public,* and that the officers committed no trespass and were not invading any private zone when they approached the trash bin.

*Id.* at 319, 107 S.Ct. at 2858 (emphasis added); *see United States v. Stroble,* 431 F.2d 1273, 1276 (6th Cir.1970) (upholding warrantless trash search, for trash alongside curb and not within curtilage); *United States v. Wolfe,* 375 F.Supp. 949 (E.D.Pa. 1974) (garbage search not violate fourth amendment because garbage not within curtilage). In *United States v. Biondich,* 652 F.2d 743 (8th Cir.), *cert. denied,* 454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981), the Eighth Circuit stated:

A person ordinarily retains some expectation of privacy in items that remain on his or her property, regardless of whether they are placed in an automobile, a home, or a garbage can. When a person makes arrangements with a sanitation service to have the items picked up, however, and when the items are placed in the designated place for collection and the regular collector makes the pickup in the usual manner on the scheduled collection day, the person loses his or her legitimate expectation of privacy in the items at the time they are taken off his or her premises.

It is apparent that all of these circumstances were present in this case. Biondich had made no special arrangements with the garbage collector to keep his trash from public view, *no one other than those authorized by Biondich entered his property* and no unusual procedures were followed other than to keep Biondich's garbage separate and available for inspection. Under these conditions, we are persuaded that Biondich retained no legitimate expectation of privacy in his garbage *once it left the curtilage of his residence.*

*Id.* at 745 (emphasis added). The *Biondich* court recognizes that there may be a legitimate expectation of privacy in garbage while it remains within the curtilage of a residence. Several state courts are of the same opinion.

In *Ball v. State,* 57 Wis.2d 653, 205 N.W.2d 353 (1973), police officers, without a warrant, entered the defendant's property and walked to the rear of the home, where they found a large barrel used for burning trash. Inside the barrel the officers found evidence identified as belonging to a stolen trailer. In holding that the officer's actions constituted a fourth amendment violation, the court commented:

In the case at bar, the defendant had his "barrel" in the back of his house on what would appear to be the curtilage of his house and hidden from the view of people passing by. There was no evidence that this was the type of container emptied by garbage men on a regular basis, or, for that matter, at all. In view of these facts and the above authorities, we are satisfied that the trash barrel was within defendant's expectation of privacy and the search of it was unlawful.

57 Wis.2d at 664, 205 N.W.2d at 358.

In *People v. Edwards,* 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969), defendant's neighbor informed police that he had seen a plastic bag containing a green substance on defendant's back porch. The police, without a warrant, entered defendant's open back yard, looked in three garbage cans located a couple of feet from the back porch door, and found a small bag of marijuana. The California court held that the search of the garbage cans violated the fourth amendment:

As we have seen, the trash can was within a few feet of the back door of defendants' home and required trespass for its inspection. It was an adjunct to the domestic economy. [citation omit-

ted]. Placing the marijuana in the trash can, so situated and used, was not an abandonment unless as to persons authorized to remove the receptacle's contents, such as trashmen. [citation omitted]. The marijuana itself was not visible without "rummaging" in the receptacle. So far as appears defendants alone resided at the house. In light of the combined facts and circumstances it appears that defendants exhibited an expectation of privacy, and we believe that expectation was reasonable under the circumstances of the case. We can readily ascribe many reasons why residents would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others, at least not until the trash has lost its identity and meaning by becoming part of a large conglomeration of trash elsewhere. Half truths leading to rumor and gossip may readily flow from an attempt to "read" the contents of another's trash.

*Id.* at 1104, 80 Cal.Rptr. at 638, 458 P.2d at 718; *see State v. Stevens,* 123 Wis.2d 303, 367 N.W.2d 788, 796 (1985) (recognizing *Ball* and that "as trash moves farther from the home and closer to the public, the disposer's reasonable expectation of privacy diminishes") *State v. Schultz,* 388 So.2d 1326, 1329 (Fla.App.1980) (citing *Ball* and noting importance of location of trash); *see also State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274, 1277 (1985) (under Hawaii Constitution reasonable expectation of privacy in closed garbage bags even at curbside); *People v. Krivda,* 5 Cal.3d 357, 96 Cal. Rptr. 62, 486 P.2d 1262 (1971) (search of garbage in well of garbage truck after garbage taken from premises violated fourth amendment), *vacated and remanded for determination of whether holding had state or federal basis,* 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), *affirmed on basis of both state and federal constitutions,* 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457 (1973); *Croker v. State,* 477 P.2d 122 (Wyo.1970) (noting that *at time* garbage removed to alley by collectors no reasonable expectation of privacy because *at that time* any member of public including police could have examined garbage in alley).

In this case, the government does not dispute that the closed garbage bags were within the curtilage of 987 Fisher Road, a single-family dwelling. The government does not dispute that the garbage bags were against the back wall of the house, hidden from the view of ordinary pedestrians passing by the front of the house. Even if someone went up the side driveway to the back of the house that person would still only be able to see some closed garbage bags, the contents of which would be unknown. *See United States v. Jacobsen,* 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 1660 n. 17, 80 L.Ed.2d 85 (1984) (container that can support reasonable expectation of privacy may not be searched without warrant); *Robbins v. California,* 453 U.S. 420, 427, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981) (plurality) (unless container is such that its contents are in plain view, contents are fully protected by fourth amendment). At the time the police officer entered the curtilage and seized the closed garbage bags from the rear of the house, the claimants retained an expectation of privacy in the bags in that area that society would recognize as reasonable. Several factors are important to this decision, none of which are talismanic individually.

The location of the closed garbage bags within the curtilage of 987 Fisher Road, as opposed to the curbside, heightens a person's expectation of privacy in those bags as long as they remain in that area. On a continuum, nobody can retain a reasonable expectation of privacy in garbage that is at a garbage dump; in *Greenwood,* the Supreme Court held that any privacy expectation in garbage at a curbside is also not reasonable. Garbage bags close to home—in a garage waiting to be set out by the curbside, within the curtilage, or in a back porch—can engender privacy expectations. While the garbage bags remained within the curtilage, the claimants retained control over them and could have retrieved them or items contained in them. It is not unheard of for people to retrieve a newspaper or sales slip that had been mistakenly

thrown away. A reasonable expectation of privacy in garbage would be at its greatest level when the garbage is still being accumulated in the home. *See, e.g., O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (respondent retained reasonable expectation of privacy in desk and file cabinets at work); *United States v. Kahan,* 350 F.Supp. 784, 796 (S.D.N.Y. 1972) (eight months of warrantless surveillance of worker's office wastebasket with only two seizures made held illegal; court noted search similar to search of private garbage can near home), *modified on other grounds,* 479 F.2d 290 (2d Cir.1973), *rev'd with instructions to reinstate dist. ct.'s judgment,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974).

Moreover, while concepts of property law and trespass are not dispositive, *Oliver,* 466 U.S. at 183, 104 S.Ct. at 1744; *United States v. Carriger,* 541 F.2d 545, 549 (6th Cir.1976) (trespass may violate reasonable expectation of privacy), the fact that the police trespassed to obtain the garbage is of some relevance. Rather than inadvertent, the trespass was intentional and with the express purpose of finding evidence of drug activity in the garbage. Professor LaFave recently commented,

> police have only limited authority to come onto the curtilage, for they must conduct themselves as would an ordinary social visitor to the premises. That hardly includes rummaging through the garbage cans of one's host. As for the second reason [for finding no reasonable expectation of privacy in the garbage] given in *Greenwood,* that might support the conclusion the police can enlist the aid of the garbage hauler even as to garbage within the curtilage, but it hardly means that the police may themselves intrude. There is no principle in Fourth Amendment jurisprudence to the effect that the police are free to do what *some* individual has been authorized to do.

LaFave, *supra,* § 2.6(c), at 30 (1989 Supp.) (original emphasis); *see* Bush & Bly, *Expectation of Privacy Analysis and Warrantless Trash Reconnaissance After Katz v. United States,* 23 Ariz.L.Rev. 283, 317 (1981) (interference with social inhibi-

tions any time police trespass onto residential lot to perform warrantless search). Chief Justice Taft recognized this principle in *Olmstead v. United States,* 277 U.S. 438, 466, 48 S.Ct. 564, 568, 72 L.Ed. 944 (1928);

> Neither the cases we have cited nor any of the many federal decisions brought to our attention hold the Fourth Amendment to have been violated as against a defendant unless there has been an official search and seizure of his papers or his tangible material effects, *or an actual physical invasion of his house "or curtilage" for the purpose of making a seizure.*

(emphasis added); *see also* Note, *A Reconsideration of the Katz Expectation of Privacy Test,* 76 Mich.L.Rev. 154, 175–77 (1977) (stating that *Katz* test should *supplement* rather than *supplant* "constitutionally protected areas" test to protect core values).

Having addressed the legal arguments in favor of finding a fourth amendment violation, the court feels compelled to address the government's arguments in opposition. First, the government's position that the garbage was abandoned is no longer a valid point. While the cases relying upon an abandonment theory are legion, the *Greenwood* Court did not rely upon that theory in finding no fourth amendment violation in a garbage search at the curbside and this court finds no reason to apply the theory to the garbage in this case. Justice Brennan in dissent in *Greenwood* stated the "Court properly rejects the state's attempt to distinguish trash searches from other searches on the theory that trash is abandoned." 108 S.Ct. at 1634. The question of abandonment is also in dispute inasmuch as the garbage was still within the curtilage when the police took it, indicating that the claimants still retained some control over it.

Second, the court does not believe that the rear of 987 Fisher Road is the functional equivalent of the curbside. As mentioned, garbage at the curbside is not within the curtilage while the garbage in this case was within the curtilage, a notable

distinction. There is a greater expectation of privacy in garbage at the rear of a home than at the curbside or at the dump. The garbage at 987 Fisher Road was *not* "in an area particularly suited for public inspection and, in a manner of speaking, public consumption." *Greenwood,* 108 S.Ct. at 1629 (citation omitted). The limited authorization to the collector to enter the property neither authorizes the police to enter nor exposes the garbage to the public sufficient to defeat an expectation of privacy. Moreover, the court is not persuaded that finding a fourth amendment violation protects the rich at the expense of the poor. The court is only holding that anyone's closed garbage bags, while within the curtilage of a backyard, are entitled to fourth amendment protection from police intrusion until they are either taken to the curbside or removed from the premises by the owner or collector.[6]

As a final matter, while the *Katz* holding extended fourth amendment protection to Katz and his words rather than the phone booth, Justice Harlan noted that the fourth amendment nevertheless "requires reference to a 'place.'" 389 U.S. at 361, 88 S.Ct. at 516. In the same way that the fourth amendment protects Katz and his words in the phone booth, the fourth amendment protects the claimants and the contents of their garbage and its concomitant import from the police while it remains within the curtilage in the backyard.

The court holds that the police engaged in a "search and seizure" within the meaning of the Fourth Amendment to the United States Constitution. The court also holds that the search and seizure was unreasonable. Warrantless searches are prima facie unreasonable. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d

564 (1971). The police had neither a warrant, probable cause, nor reasonable suspicion to enter the curtilage to search for evidence in the garbage. The government has not argued that any exceptions to the warrant requirement apply.

## III. FOURTH AMENDMENT TO THE MICHIGAN CONSTITUTION

The Fourth Amendment to the Michigan Constitution states:

The person, houses, papers and possession of every person shall be secure from *unreasonable searches and seizures....* The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer *outside the curtilage of any dwelling house in this state.*

Mich. Const. art. 1, § 11 (emphasis added). As the text of the Michigan Constitution makes clear, curtilage is given explicit recognition. In *People v. Whotte,* 113 Mich. App. 12, 317 N.W.2d 266 (1982) (lv. app. den.), the Michigan Court of Appeals adopted the test set forth by the Supreme Court of Alaska for deciding garbage search cases:

1. Where the trash is located,
2. Whether the dwelling is multiple or single unit,
3. Who removed the trash,
4. Where the search of the trash takes place.

*Id.* at 17, 317 N.W.2d 266 (citing *Smith v. State,* 510 P.2d 793, 797–98 (Alaska 1973)). In *Whotte,* a police officer went to the defendant's residence, a two-family dwelling. The officer

testified that when he visited the residence he was told by defendant's wife that she was married to a "Richard Martin Johnson". That day, the detective

---

**6.** To the extent that the government argues that either a subjective or objective expectation of privacy in the garbage was diminished because Grosse Pointe City always collects its garbage by sending a collector into the backyards of its residents, the court notes Professors LaFave and Israel's comment that a government should not

be able to diminish fourth amendment protection by announcing in advance an intention to take a particular course of action. LaFave & Israel, *Criminal Procedure,* § 3.2(a), at 98 (West Student ed. 1985). The government has not argued the lack of a subjective expectation of privacy.

observed garbage scattered over the backyard as if dogs or cats or other animals had been through it. He took particular notice of a gas station credit slip with the name Johnson on it. When [the officer] returned the following day after having checked into other possible aliases that defendant may have been using, no one was home at defendant's residence. The detective went to the backyard and again looked at the "Johnson" credit slip and other papers with the name Johnson on them. Within a rubbish bag, [the officer] saw and retrieved a white envelope found to contain defendant's marriage license. [The officer] testified that he also took from the rubbish bag a wallet belonging to ... one of the robbery victims.

*Id.,* 113 Mich.App. at 15, 317 N.W.2d 266. In a 2–1 decision, the court held that the fourth amendment was not violated. While the third and fourth factors weighed in favor of a finding that a reasonable expectation of privacy existed, the court noted that the first two factors militated against such a finding. In particular, the court noted that the dwelling was a two-family unit, that the evidence did not show that the garbage was near the house, that the garbage was scattered in the open backyard, and that the general condition of the backyard indicated that there could be no reasonable expectation of privacy with regard to the garbage.

As mentioned, the garbage bags in this case were closed at the top and located next to the house, approximately ten to fifteen feet from the back door. The house is a single-family dwelling, and the police trespassed within the curtilage to search and seize the garbage bags. While the police did not search through the garbage bags until the scooter was driven away from the house, that factor does not destroy a reasonable expectation of privacy in light of the first three factors. In the *Smith* case, the Alaska Supreme Court stated that "trash located close to a single-family dwelling, on the same property as the dwelling, and searched by police officers at that location ... would be a strong case for holding the expectation of privacy to be reasonable." 510 P.2d at 797–98, *cited with approval in Whotte,* 113 Mich. App. at 17, 317 N.W.2d 266. As under the United States Constitution, the police engaged in an unreasonable search and seizure under the Michigan Constitution.

## IV. CONCLUSION

Garbage searches have resulted in a surprisingly large number of reported decisions, the vast majority of which concern garbage at the curbside or garbage taken off the property by the collector in complicity with the police. Few decisions, however, deal directly with closed garbage bags within the curtilage of a home that are searched and seized directly by the police. The court queries whether allowing police one step within the curtilage to search and seize garbage bags allows the next step through the door. The court believes that that step should not have been taken under the facts of this case. Reminiscent of the poem "The Road Not Taken,"[7] the government decided to do directly what it already could do indirectly,[8] and that trip up the side driveway makes all the difference for fourth amendment purposes. The motion to suppress is GRANTED. The claimants shall submit an appropriate order approved as to form by all counsel.

---

**7.** A portion of the last stanza reads:

Two roads diverged in a wood, and I—
I took the one less travelled by,
And that has made all the difference.

Robert Frost (1916).

**8.** The police could have had the regular garbage collector deliver the garbage bags to them after they had been removed from the curtilage of the home. *See United States v. Trice,* 864 F.2d 1421 (8th Cir.1988); *Biondich,* 652 F.2d at 745.